IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

KATHLEEN A. HAGAN, JOSEPH PRIETO,   )
RICHARD A PETERSON, PETER AKEMANN,   )
and GILBERTO GALICIA,   )
  )
    Plaintiffs,   )
  )
    v.   )    No.  11-3213
  )
PATRICK J. QUINN, Governor of Illinois,   )
MITCH WEISZ, Chairman of the Illinois   )
Workers' Compensation Commission,   )
MARIO BASURTO, KEVIN LAMBORN,   )
YOLAINE DAUPHIN, NANCY LINDSAY,   )
JAMES DEMUNNO, MOLLY MASON,   )
DAN DONOHOO, THOMAS, TYRRELL, and   )
DAVID GORE, Commissioners of the Illinois   )
Workers' Compensation Commission,   )
  )
    Defendants.   )

## OPINION

SUE E. MYERSCOUGH, United States District Judge.

On July 12, 2011, Plaintiffs, Kathleen A. Hagan; Joseph V. Prieto;

Richard A. Peterson; Peter Akemann; and Gilberto Galicia, all of whom

are arbitrators on the Illinois Workers Compensation Commission

(Commission), filed a three-count Complaint pursuant to 42 U.S.C. §

1983 against Defendants Patrick J. Quinn, the Governor of Illinois;

Mitch Weisz, the Chairman of the Commission; and the following

commissioners: Mario Basurto; Kevin Lamborn; Yolaine Dauphin; Nancy

Lindsay; James Demunno; Molly Mason; Dan Donohoo, Thomas Tyrrell;

and David Gore.  Plaintiffs filed the Complaint after the enactment of

Public Act 97-18, signed into law by Governor Quinn on June 28, 2011,

which contained reforms to the Workers Compensation Act (Act) (820

ILCS 305/1, et seq.).

One of the provisions of the new legislation provided that Plaintiffs'

terms of office as arbitrators expired effective July 1, 2011.  In Count I of

the Complaint, Plaintiffs allege that their due process rights were violated

by the legislation because they were deprived of a property interest in

their jobs without due process of law.

Plaintiffs also filed a Motion for Preliminary Injunction based on

the alleged denial of their property interest in their jobs as arbitrators.

Plaintiffs have asked this Court to grant them a preliminary injunction

prohibiting Defendants from removing them from office or from

appointing anyone to those terms of office pending trial in this cause.

This Court held an evidentiary hearing on July 28, 2011, on the Motion for Preliminary Injunction. At the hearing, the parties tendered an Amended Stipulation (Joint Exhibit No. 1, d/e 11) of facts solely for the purpose of the hearing.

Based on the pleadings, the Amended Stipulation, and arguments made at the hearing, this Court denies the Motion for Preliminary Injunction. Plaintiffs have failed to demonstrate: (1) a likelihood of success on the merits; (2) they have no adequate remedy at law; and (3) irreparable harm will be suffered if the preliminary injunction is not granted. Further, even if Plaintiffs had demonstrated some likelihood of success on the merits, no adequate remedy at law, and irreparable harm, the balance of factors do not heavily weigh in Plaintiffs' favor. Despite the Plaintiffs' unfortunate plight, Plaintiffs are not entitled to a preliminary injunction for these reasons.

## I. FACTS

The following facts are taken from the parties' Amended

Stipulation and the Complaint.

Plaintiffs are all arbitrators under the Act. Hagan was appointed to the position of arbitrator effective July 1989, and Galicia was appointed in 1984. Hagan's and Galicia's appointments, in accordance with State law at the time, had no set termination date and they served under the protections of the Illinois Personnel Code (20 ILCS 415/1, et seq.), including that they could only be removed for just cause.

Prieto, Peterson, and Akemann were appointed subsequent to 1989 and reappointed at various points thereafter for six-year terms. Prieto was last appointed in 2008, Peterson in 2009, and Akemann in 2006. Their appointments, in accordance with State law at that time, had the protections of the Illinois Personnel Code, including protection that they could only be removed for just cause during their six-year term.

After July 2005 and until the recent reform, the Act provided that arbitrators were appointed to specific terms of office subject to reappointment:

> Each arbitrator appointed after the effective date
> of this amendatory Act of 1989 shall be appointed

for a term of 6 years.  Each arbitrator shall be appointed for a subsequent term unless the Chairman makes a recommendation to the Commission, no later than 60 days prior to the expiration of the term, not to reappoint the arbitrator.  Notice of such a recommendation shall also be given to the arbitrator no later than 60 days prior to the expiration of the term.  Upon such recommendation by the Chairman, the arbitrator shall be appointed for a subsequent term unless 8 of 10 members of the Commission, including the Chairman, vote not to reappoint the arbitrator.

820 ILCS 305/14.  Public Act 97-18 removed this provision and added the following:

Notwithstanding any other provision of this Section, the term of all arbitrators serving on the effective date of this amendatory Act of the 97th General Assembly, including any arbitrators on administrative leave, shall terminate at the close of business on July 1, 2011, but the incumbents shall continue to exercise all of their duties until they are reappointed or their successors are appointed.

The parties stipulated that Plaintiffs continue to serve until their successors are duly appointed.  The parties further stipulated that Plaintiffs may apply for the positions and, therefore, may be the successors.  The amendments made pursuant to Public Act 97-18 also

provided for three-year terms and required that all arbitrators who had not previously served as arbitrators be authorized to practice law in Illinois.

The Act, as amended, still provides that "[a]ll arbitrators shall be subject to the provisions of the Personnel Code," but now also states: "The changes made to this Section by this amendatory Act of the 97th General Assembly shall prevail over any conflict with the Personnel Code."

The parties stipulated that Plaintiffs have not been given notice of any charges that would constitute legal cause for terminating their employment. No such charges are pending against Plaintiffs.

## II. LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (citation omitted). A party seeking a preliminary injunction must initially demonstrate: (1) some likelihood of succeeding on the

merits; (2) no adequate remedy at law exists; and (3) irreparable harm if preliminary relief is denied. <u>Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.</u>, 549 F.3d 1079, 1086 (7th Cir. 2008). If the moving party does not demonstrate any one of these three initial requirements, the request for a preliminary injunction must be denied. <u>Id.</u>

If, however, the party has met the initial threshold, the Court then "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." <u>Id.</u> When balancing the harms, the Court employs a sliding-scale approach. <u>See</u> <u>Roland Machinery Co. v. Dresser Industries, Inc.</u>, 749 F.2d 380, 388 (7th Cir. 1984). That is, the greater the movant's chance of success, the less strong of a showing the movant must make that the balance of harms is in the movant's favor, and vice versa. <u>Id.</u> at 387. In balancing the harm to each party, the Court should also consider the public interest. <u>Judge v. Quinn,</u> 612 F.3d 537, 546 (7th

Cir. 2010), opinion am'd on denial of reh'g by 387 Fed.Appx. 629 (7th Cir. 2010).

Whether to grant a preliminary injunction is within this Court's discretion. Ashcroft v. American Civil Liberties Union, 542 U.S. 656, 664 (2004) (noting that the Supreme Court and appellate courts review preliminary injunctions for an abuse of discretion); but see, Roland, 749 F.2d 380; (discussing whether the abuse-of-discretion standard is appropriate, ultimately concluding the trial court committed clear factual and legal errors by granting the motion for a preliminary injunction).

## III. ANALYSIS

Plaintiffs assert that by virtue of the Personnel Code and the Act as it existed prior to Public Act 97-18, Plaintiffs have a protected property interest in their employment as arbitrators. Plaintiffs seek an injunction prohibiting Defendants from wrongfully removing Plaintiffs from office in a manner that deprives them of their property interest without due process of law.

**A.      Likelihood of Success on the Merits**

To establish a likelihood of success on the merits, Plaintiffs must demonstrate that they have "some prospect of prevailing on the merits." Hoosier Energy Rural Elec. Co-Op., Inc. v. John Hancock Life Ins. Co., 582 F.3d 721, 730 (7th Cir. 2009). When determining the likelihood of success on the merits in a preliminary injunction action, the Court is not deciding the merits of the case. See Government Suppliers Consolidating Services, Inc. v. Bayh, 734 F.Supp. 853, 869 (S.D. Ind. 1990). A determination that a movant has shown a likelihood of success on the merits "is merely a decision that the suit has enough merit–which need not be great merit–to justify an order that will freeze the situation, in the plaintiff's favor, for such time as it may take to determine whether the suit is, or is not, meritorious." Ayres v. City of Chicago, 125 F.3d 1010, 1013 (7th Cir. 1997).

"To succeed in a Section 1983 action, [a plaintiff] must establish that the conduct complained of was carried out under color of state law and that this conduct deprived him of rights, privileges[,] or immunities guaranteed by the Constitution or laws of the United States." Bordelon

v. Chicago School Reform Board of Trustees, 8 F.Supp.2d 779, 786 (N.D. Ill. 1998). The Due Process Clause of the Fourteenth Amendment forbids a state to deprive any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

Plaintiffs assert they have demonstrated a likelihood of success on the merits because: (1) they have a property interest in their positions because they were appointed to their offices subject to the protections of the Personnel Code, which provides they cannot be fired except on just cause; and (2) their property interest was taken without due process by the enactment of Public Act 97-18.

Defendants assert Plaintiffs cannot show a likelihood of success on the merits because the Eleventh Amendment bars Plaintiffs' claim for injunctive relief. Defendants also argue that the legislature could constitutionally alter Plaintiffs' terms in office without violating Plaintiffs' due process rights.

1.    Eleventh Amendment

Plaintiffs sued Defendants in their official capacity for injunctive

relief.  A suit against a state official in his official capacity is a suit against the State.  <u>Power v. Summers</u>, 226 F.3d 815, 818 (7th Cir. 2000).  A suit against the State, or state official in his official capacity, is barred by the Eleventh Amendment unless: (1) Congress has abrogated the State's immunity from suit, (2) a State has waived its immunity and consented to suit, or (3) the suit is one for prospective injunctive relief pursuant to <u>Ex Parte Young</u>, 209 U.S. 123, 15-60 (1908).  <u>Sonnleitner v. York</u>, 304 F.3d 704, 717 (7th Cir. 2002).

The only of these exceptions at issue here is whether the suit is one for prospective injunctive relief.  To determine whether this exception applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief property characterized as prospective.'"  <u>Verizon Maryland, Inc. v. Public Service Com'n of Maryland</u>, 535 U.S. 635, 645 (2002), quoting  <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>  521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in the judgment).

Defendants argue that the alleged violation of due process is not an ongoing violation. In support thereof, Defendants cite Sonnleitner v. York, 304 F.3d 704, 718 (7th Cir. 2002), which held that the "underlying procedural due process claim" could not be "reasonably construed as 'ongoing.'" The Seventh Circuit noted that, even assuming the plaintiff's constitutional rights were violated, the violation was not the demotion but the fact that the demotion occurred without an adequate opportunity to be heard. Id., 304 F.3d at 718. The Seventh Circuit found this was a past violation, not an ongoing one. Id., 304 F.3d at 719. See also In Garcia v. Illinois State Police, 2006 WL 2191341, *3 (C.D. Ill. 2006) (denial of pretermination hearing cannot give rise to a procedural due process claim under Ex parte Young).

However, at least one court has distinguished Sonnleitner. In Kinney v. Anglin, 2011 WL 1899345, *7 (C.D. Ill. 2011), the court noted that in Sonnleitner, the plaintiff was ultimately given the opportunity to refute the claims against him and a personnel commission determined his demotion was found improper. Kinney, 2011 WL

1899345, at *7.  The <u>Kinney</u> court also noted that "the Seventh Circuit has continued to indicate that when an individual's termination or dismissal directly violates a federal constitutional guarantee, he may maintain a suit for reinstatement."  <u>Kinney</u>, 2011 WL 1899345, at *7; <u>See</u> <u>also</u>, <u>Power v. Summers</u>, 226 F.3d 815, 820 (7th Cir. 2000) ("an injunction that orders a state employee who has been demoted because of his exercise of a federally protected right to be restored to his previous position is not barred by the Eleventh Amendment even though it imposes a salary obligation on the state").

Nonetheless, this issue is more appropriately raised in a Motion to Dismiss.  For purposes of the Motion for Preliminary Injunction only, this Court finds that the Eleventh Amendment does not bar the claim.

2.  <u>Count I: Property Interest</u>

In Count I, Plaintiffs claim that Defendants violated their rights to due process.  Plaintiffs assert they have shown a likelihood of success on the merits on Count I because there was no cause for their removal. Essentially, Plaintiffs are claiming that the General Assembly could not

amend the Act to terminate their employment.

This Court must first determine whether Plaintiffs have shown a likelihood of demonstrating they have a property interest in their employment. Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996) (court must ascertain whether the plaintiff had been deprived of a protected property interest and, if so, what process is constitutionally due); Gorman v. Robinson, 977 F.2d 350, 356 (7th Cir. 1992) ("To recover on a procedural due process claim, a plaintiff must prove that he has a protectible interest in his employment"). Property interests in employment "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). In Illinois, "[a] person has a property interest in his job where he has a legitimate expectation of continued employment . . . based on a legitimate claim of entitlement." Draghi v. County of Cook, 184 F.3d 689, 692 (7th Cir. 1999), quoting Faustrum v. Board of Fire & Police Comm'rs., 240 Ill. App. 3d 947, 949 (1993). A legitimate expectation of

employment may come from an ordinance, State law, or contract that limits the ability of the government agency to discharge him.  <u>Faustrum</u>, 240 Ill. App. 3d at 949.

Plaintiffs have shown a strong likelihood that they had a property interest in their employment.  The Personnel Code–which the Act specifically indicates applies (820 ILCS 305/14)– allows for termination only for cause.  <u>See</u> 20 ILCS 415/11.  Courts generally find  that a public employee who cannot be discharged absent cause has a property interest in his employment.  <u>See</u> <u>Loudermill</u>, 470 U.S. at 538-39 (1985) (Ohio employees classified as civil service employees who could only be dismissed for misfeasance had a property right in continued employment);  <u>Gorman,</u> 977 F.2d at 356-57 (finding protectible property interest where the housing authority employee could only be terminated for just cause).

However, even though Plaintiffs had a property interest in continued employment before the amendment, they cannot show a strong likelihood of success on the merits because the legislature has the

power to legislatively change the duration of employment and the

legislative process provided Plaintiffs with all the process they were due.

"The presumption is that laws do not create private contractual or

vested rights, but merely declare a policy to be pursued until the

legislature ordains otherwise." People ex rel., Sklodowski v. State of

Illinois, 182 Ill. 2d 220, 232 (1998) (involving a funding provision in the

Pension Code)[1]. "There is no vested right in the mere continuance of a

law." Id.; see also Grobsmith v. Kempiners, 88 Ill. 2d 399, 404-05

(1982) ("civil service status is not a vested right"). There is "no

constitutional impediment to the power of the General Assembly to

change the duration of the term of appointments or the method of fixing

the time when presently existing terms would terminate." Id. The

General Assembly, having enacted a statute that created a right, "retains

the power to enact new legislation altering or eliminating the right, and

---

[1] Different rules apply to State contracts. "The legislature can by amending the statute eliminate the property right; but if the statute created a contract right against the state, then the amendment would impair the obligations of contract." See Pittman v. Chicago Bd. of Educ., 64 F.3d 1098, 1104 (1995) (noting that "a statute is not presumed to create contractual rights").

that elimination does not contravene the Due Process [Clause]." Story v. Green, 978 F.2d 60, 63 (2nd Cir. 1992), citing Atkins v. Parker, 472 U.S. 115, 129 (1985); see also Gattis v. Gravett, 806 F.2d 778, 781 (1986) (finding that the plaintiffs were not entitled to any procedural protections when they were discharged because the legislature had terminated or extinguished the property interest previously conferred).

In fact, the legislative process gives Plaintiffs all the process to which they are due. For instance, in Fumarolo v. Chicago Bd. of Educ., 142 Ill. 2d 54, 107 (1991), the Illinois Supreme Court found the plaintiffs had a property interest in continued employment due to state law and the reiteration of state law by the Board. Therefore, the plaintiffs were entitled to due process before their permanent tenure was reduced to term employment. However, the court found that "the legislative process itself created all the procedural safeguards necessary to provide the plaintiffs with due process." Fumarolo, 142 Ill. 2d at 107.

Plaintiffs cite East St. Louis Federation of Teachers, Local 1220, American Federation of Teachers, AFL-CIO v. East St. Louis School Dist.

<u>No. 189 Financial Oversight Panel</u>, 178 Ill. 2d 399 (1997), in support of their position that the legislature could not divest them of their property interest.  This Court finds that case distinguishable, however, because there the statute in question did not, in and of itself, extinguish or terminate the plaintiffs' term of office.  <u>East St. Louis</u>, 178 Ill. 2d at 405 (statute gave oversight panel the authority to remove school board members from their office for failure to follow a valid order of the panel). That statute gave the authority to do so to an oversight panel.  <u>East St. Louis</u>, 178 Ill. 2d at 405.  The Illinois Supreme Court determined that when the oversight panel exercised its power to terminate the plaintiffs' term of office, the panel  must afford the office holders due process.  <u>East St. Louis</u>, 178 Ill. 2d at 419.  Further, in <u>East St. Louis</u>, the legislation did not constitute due process because the legislature did not interfere with the property right.  In contrast, here, the legislation itself ended Plaintiffs' terms of office and constituted all the process to which Plaintiffs were due.  <u>See</u> <u>Fumarolo</u>, 142 Ill. 2d at 107 (finding the legislative process itself created all the procedural safeguards necessary to

provide the plaintiffs with due process).

An exception to the legislative process itself providing sufficient due process applies if the legislative process was arbitrary or irrational.  See Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982) (a federal interest remains in "protecting the individual citizen from state action that is wholly arbitrary and irrational)(internal citations omitted).   As stated in Conway v. Sorrell, 894 F.Supp. 794, 802 (D. Vt. 1995):

> [A]s the United States Supreme Court indicated in Logan, the principle that the legislative determination satisfies due process is not necessarily true if due process is invoked to "protect[ ] the individual citizen from state action that is wholly arbitrary or irrational." 455 U.S. at 433, 102 S.Ct. at 1156 (emphasis added). Similarly, the Atkins Court indicated that the general rule would not apply if the claimant questioned the procedural fairness of an individual determination and alleged that the legislative process itself had been somehow defective. 472 U.S. at 129, 130, 105 S.Ct. at 2528, 2529.

Id. (finding question of fact remained whether the legislature was "merely making a general policy decision" when it converted their jobs from "classified" to "exempt" status); see also Story, 978 F.2d at 63 (citing

<u>Atkins</u> and reiterating that general rule that the legislature can alter or eliminate a right previously conferred applies "absent any indication of some defect in the legislative process")[2].

Plaintiffs have not yet identified evidence suggesting that a defect in the legislative process occurred or that the enactment of Public Act 97-18 was anything more than a general policy decision. Therefore, for purposes of the Motion for Preliminary Injunction, Plaintiffs have not shown a likelihood of success on the merits.

## B. Irreparable Harm and Inadequate Remedy at Law

To obtain a preliminary injunction, the movant must "establish that it will be irreparably harmed if it does not receive preliminary relief, and that money damages and/or an injunction ordered at final judgment

---

[2] This analysis is similar to the reorganization rule. <u>See</u> <u>Schulz v. Green County, State of Wisc.</u>, __ F.3d __, 2011 WL 2864429, *2 (7th Cir. 2011) ("When a government eliminates an employee's position in connection with a 'legitimate governmental reorganization,' . . . the employee is not entitled to notice or a hearing"; however, if the reorganization affects only one person or a small number of individuals, a court may examine whether the reorganization was designed to harm a specific employee or small number of employees). At this stage in the proceedings, no evidence has been presented that the legislation constituted an unlawful governmental reorganization.

would not rectify that harm." Abbott Laboratories v. Mead Johnson &
Co, 971 F.2d 6, 16 (7th Cir. 1992). As stated in Roland Machinery, 749
F.2d at 386:

> The absence of an adequate remedy at law is a
> precondition to any form of equitable relief. The
> requirement of irreparable harm is needed to take
> care of the case where although the ultimate relief
> that the plaintiff is seeking is equitable, implying
> that he has no adequate remedy at law, he can
> easily wait till the end of trial to get that relief.

Money damages may be insufficient where (1) the plaintiff is so poor he
would be harmed in the interim by the loss of the monetary benefits, (2)
the plaintiff would be unable to finance the lawsuit without the money
he wishes to recover, (3) damages from the defendant would be
unobtainable because the defendant will be insolvent prior to the final
judgment, and (4) the nature of the plaintiff's loss may make damages
difficult to calculate. Id., 749 F.2d at 386.

Plaintiffs assert they have no adequate remedy at law and will suffer
irreparable harm because (1) their positions are a form of public office,
"far more than mere employment" and (2) the delay in restoring them to

their positions affects their docket of pending cases and would delay and interrupt the claims of workers.  Plaintiffs also assert they are "vulnerable to suddenly being removed from office (and not being paid) while at the same time being unable to secure other employment due to the risk that such action would be used in a new attempt to remove [them] from office for 'neglect of duty'."

Defendants respond that–while not conceding that Plaintiffs are entitled to an award of damages–damages would be an adequate remedy at law.  Defendants also assert that no irreparable harm would occur here without an injunction.  Plaintiffs are still working as arbitrators and have been encouraged to apply for reappointment.  If they are not reappointed, they can look for new employment.  According to Defendants, any assertion that they will not be reappointed is speculative.  Defendants further argue that, if Plaintiffs are not reappointed, no delay will occur in their cases because the parties can stipulate to the record of evidence being submitted to a new judge or the case can be retried before a new judge.

"The Supreme Court set a high standard for obtaining preliminary injunctions restraining termination of employment in <u>Sampson v. Murray</u>, 415 U.S. 61 (1974)." <u>Bedrossian v. Northwestern Memorial Hospital</u>, 409 F.3d 840, 845 (7th Cir. 2005) (finding the district court did not abuse its discretion in finding the plaintiff failed to show irreparable harm where the plaintiff alleged lost income and damaged reputation). More than speculation of irreparable harm is necessary to afford a party preliminary injunctive relief. <u>See</u> <u>Matta-Ballesteros ex rel. Stolar v. Henman</u>, 697 F.Supp. 1036, 1038 (S.D. Ill. 1988). In addition, inability to find another job is not irreparable harm. <u>Bedrossian</u>, 409 F.3d at 846.

The damages Plaintiffs are likely to suffer if they are removed from their positions and not reappointed are compensable by money damages. Plaintiffs have not met their burden of showing that non-economic damages that they might suffer–such as a loss of seniority–would not be compensable. <u>See</u>, <u>e.g.</u>, <u>Bordelon</u>, 8 F. Supp. 2d at 789 (reassignment of principal to an administrative position resulted in irreparable injury

where the court found that non-economic benefits associated with his position as principal would not be compensable through an award of money damages); Ardito v. City of Providence, 263 F.Supp.2d 358, 372 (D.R.I. 2003) (finding the police academy applicants demonstrated irreparable injury where they would lose seniority rights and seniority affected job assignments, vacation selection, promotions, and layoffs; court found it would be virtually impossible to measure the value of seniority).

This Court recognizes that money damages are not an adequte remedy for some constitutional violations.  See Campbell v. Miller, 373 F.3d 834, 835 (7th Cir. 2004) (concerning Fourth Amendment unreasonable search claim; cautioning against the assumption "that money damages never is an adequate remedy for a constitutional wrong"); Milwaukee County Pavers Ass'n v. Fiedler, 707 F.Supp. 1016, 1032 (W.D. Wis. 1989) (involving equal protection violation and noting "[w]here violations of constitutional rights are alleged, further showing of irreparable injury may not be required if more than merely money is at

stake"); <u>Jessen v. Village of Lyndon Station</u>, 519 F.Supp. 1183, 1189 (W.D. Wis. 1981) (finding irreparable harm where even if the plaintiff who was summarily fired ultimately prevails, he will have lost his constitutional right to a pretermination hearing).  However, even in a procedural due process claim, "there is no harm where the injury is ultimately redressable through monetary compensation."  <u>Hamlyn v. Rock Island County Metropolitan Mass Transit Dist.</u>, 960 F.Supp. 160, 163 (C.D. Ill. 1997) (involving an exclusion from a mass transit reduced fare program).

Moreover, this Court has found, for purposes of the Motion for Preliminary Injunction, that Plaintiffs likely received all the process they were due through the legislative process.  As such, they were not likely entitled to a pretermination hearing.  <u>Oburn v. Shapp</u>, 521 F.2d 142, 151 (3rd Cir. 1975) (allegation that the plaintiffs had been irreparably harmed by the denial of Fourteenth Amendment rights was not compelling where serious doubt existed regarding the validity of the legal premise underlying the claim of a constitutional deprivation).  This Court

finds that Plaintiffs have not demonstrated that they have no adequate remedy at law or that they will be irreparably harmed absent a preliminary injunction.

## C.  Balancing of the Harms

Because Plaintiffs have not shown a likelihood of success on the merits, irreparable harm, and no adequate remedy at law, this Court need not balance the harms.  See <u>Girl Scouts of Manitou Council, Inc.</u>, 549 F.3d at 1086 (only if the party has shown a likelihood of success on the merits, irreparable harm, and no adequate remedy at law does the court balance the harms).  However, even if Plaintiffs had shown some likelihood of success on the merits, irreparable harm, and no adequate remedy at law, the balance of harms does not strongly favor Plaintiffs.

When balancing the harms, this Court must weigh the irreparable harm that Plaintiffs would endure without the protection of the preliminary injunction against any irreparable harm Defendants would suffer if the Court were to grant the requested relief.  See <u>Roland Machinery</u>, 749 F.2d at 388.  The greater Plaintiffs' chance of success,

the less strong of a showing Plaintiffs must make that the balance of harms is in Plaintiffs' favor and vice versa.  Id., 749 F.2d at 388.

Plaintiffs argue the balance of the harms favors Plaintiffs because the remedy at law would be inadequate and no significant harm would result to Defendants.  Plaintiffs assert that, if the injunction is not granted, the Governor will fill the positions with other candidates. Plaintiffs also assert the public interest favors granting the preliminary injunction because claimants and employers have an interest in assuring that decisions of the Commission are final and not called into question on the basis of the authority of the arbitrator.

Defendants argue the integrity of the Workers' Compensation Commission is at stake.  According to Defendants, Plaintiffs are asking the Court to stay a part of a comprehensive package of changes that the General Assembly believed was in the public interest.

The public has an interest in the Court enjoining unconstitutional legislation.  Back v. Carter, 933 F. Supp. 738, 761 (N.D. Ind. 1996). However, this Court has determined, for purposes of the Motion for

Preliminary Injunction, that the legislation is likely constitutional.   In these circumstances, this Court is hesitant to usurp the power of the legislature.  See, e.g., McKeown v. Pacheko, 2011 WL 1335199, *2 (D.S.C. 2011) (denying preliminary injunction, finding the plaintiff could not "justify the public harm that would occur if the court were to usurp prison medical personnel decision making").

Because Plaintiffs can only show, at most, a small likelihood of success on the merits, the balance of harms must weigh heavily in their favor.  Plaintiffs cannot meet that burden.

IV. CONCLUSION

For these reasons, Plaintiffs' Motion for Preliminary Injunction (d/e 2) is DENIED.  IT IS SO ORDERED.

ENTERED: July 29, 2011
FOR THE COURT:

s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE