**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**
**Springfield Division**

| | |
|---|---|
| KATHLEEN A. HAGAN, *et al.* | |
| Plaintiffs, | |
| v. | No.: 11 – 3213 |
| PATRICK J. QUINN, Governor of Illinois, *et al.* | |
| Defendants. | Hon. Sue E. Myerscough |
| | Jury Demanded |

### RESPONSE TO MOTION TO DISMISS

Kathleen A. Hagan, *et al.*, plaintiffs, by Carl R. Draper and Mary Lee Leahy, their attorneys hereby offer the court their Response to the Motion to Dismiss [ d/e # 14] filed by defendants.

## INTRODUCTION

Plaintiffs filed a Complaint against Governor Quinn and the members of the Workers' Compensation Commission seeking money damages together with declaratory and injunctive relief to restore the plaintiffs as Arbitrators of the Workers' Compensation Commission. As will be set forth in more detail herein, plaintiffs have the employment protections under Illinois law that authorizes removal from their positions only for cause. As such, they have a well recognized property interest in their terms of office. A new law (P.A. 97–18) terminated their employment effective on July 1, 2011 without any cause and without prior notice nor opportunity for hearing. Under that Act, the Arbitrators continued to perform their duties until the Governor made appointments. He did so on October 14, 2011 resulting in the termination of 4 of the 5 plaintiffs. While not a specific allegation in the complaint, the press release from Governor Quinn attached hereto as Exhibit 1 shows that the allegations in the Complaint proved true The final day of the

*FELDMAN, WASSER
DRAPER & COX*
1307 S. Seventh St.
Springfield, IL 62703

"holdover" status of plaintiffs was October 14, 2011 when new appointees were named.  As such, the new Act deprives plaintiffs of property without due process of law.

**STATEMENT OF FACTS**

The facts in this cause come from the uncontested allegations of the Complaint, and the affidavits in support of the Motion for Preliminary Injunction. The history of events is short and uncomplicated. Under a motion to dismiss under Federal Rule of Civil Procedure 12 (b) (6), all well-pleaded allegations of the complaint are deemed admitted with every reasonable doubt resolved in favor of the pleader. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969). The legal standards to be applied are discussed in more detail below.

In addition to making changes in the workers' compensation system itself, the new law makes "reforms" to the operations of the Commission. Key among those changes are revisions to section 14 of the Workers' Compensation Act (hereinafter, "the Act") that create the positions of Arbitrators and establish their employment rights. Under the new legislation, the terms of all existing plaintiff Arbitrators are declared to have terminated on July 1, 2011 and the plaintiffs have to seek a new appointment to become Arbitrators again. As alleged in the Complaint, the plaintiffs were already appointed to either permanent, "certified" employment status with no termination dates or to set terms of office that have not yet expired. Further, all of the plaintiffs have the protections of the Illinois Personnel Code that protect them from termination unless there is just cause. The Act has always had, and still retains, a procedure for discipline including termination for any arbitrator who may have engaged in conduct that merits termination from employment.  The new appointees likewise have the same job security protections.  No part of the Illinois Personnel Code was changed.

No plaintiff has engaged in, nor been accused of any misconduct of any kind.  Instead, P.A. 97-18 summarily terminated their employment.

Kathleen A. Hagan was appointed to the position of Arbitrator effective in July 1989.  Her appointment, in accordance with State law at that time, had no set termination date.  She served under the protections of the Illinois Personnel Code which included protection that she could only be removed for just cause.  Gilberto Galacia was hired and protected in the same manner as was Hagan.  His appointment was also effective in July, 1989.

The other three Plaintiffs, Joseph V. Prieto, Richard Peterson, and Peter Akemann were appointed to six (6) year term appointments.  Prieto was appointed in September, 1990 and again in 1996, 2002, and 2008.  Thus, on July 1, 2011, he had over three years remaining in his term appointment.

Peterson was appointed in September, 2003, and reappointed in 2009.  Thus, on July 1, 2011, he had over four (4) years remaining in his six (6) years term appointment.

Akemann was appointed in December, 1994, and reappointed in 2000 and 2006.  Thus, on July 1, 2011, he had eighteen (18) months remaining in his six (6) year term appointment.

On June 28, 2011, Defendant Quinn signed into law H.B. 1698 effective immediately as Public Act 97-0018.  That Act included the following:

> Notwithstanding any other provision of this Section, the term of all arbitrators serving on the effective date of this amendatory Act of the 97th General Assembly, including any arbitrators on administrative leave, shall terminate at the close of business on July 1, 2011, but the incumbents shall continue to exercise all of their duties until they are reappointed or their successors are appointed.
>
> On and after the effective date of this amendatory Act of the 97th General Assembly, arbitrators shall be appointed to 3-year terms by the full Commission, except that initial appointments made on and

*FELDMAN, WASSER*
*DRAPER & COX*
1307 S. Seventh St.
Springfield, IL 62703

after the effective date of this amendatory Act of the 97th General Assembly shall be made as follows:

> (1)  All appointments shall be made by the Governor with the advice and consent of the Senate.
>
> (2)  12 arbitrators shall be appointed to terms expiring July 1, 2012; 12 arbitrators shall be appointed to terms expiring July 1, 2013; and all additional arbitrators shall be appointed to terms expiring July 1, 2014.

Upon the expiration of a term, the Chairman shall evaluate the performance of the arbitrator and may recommend that he or she be reappointed to a second or subsequent term by the full Commission. (underlining is in original bill)

The Personnel Code, 20 ILCS 405 *et seq*. was not amended to conform with Public Act 97-0018.  The purpose of the Personnel Code

is to establish for the government of the State of Illinois a system of personnel administration under the Governor, based on merit principles and scientific methods.

20 ILCS 414/2. Section 415/4c of the Personnel Code provides that certain positions be exempt from certain jurisdiction provisions of the Personnel Code.  That section was not amended to add arbitrators as exempt from any part of the jurisdiction of the Code.

Three Plaintiffs held term appointments.  Section 415/8b.18 of the Personnel Code deals with term appointments.  Section 305/14 of the Workers' Compensation Act (820 ILCS 305/14) reads, in part,

Each arbitrator appointed after the effective date of this amendatory Act of 1989 shall be appointed for a term of 6 years.  Each arbitrator shall be appointed for a subsequent term unless the Chairman makes a recommendation to the Commission, no later than 60 days prior to the expiration of the term, not to reappoint the arbitrator.  Notice of such a recommendation shall also be given to the arbitrator no later than 60 days prior to the expiration of the term.  Upon such

*FELDMAN, WASSER DRAPER & COX*
1307 S. Seventh St.
Springfield, IL 62703

recommendation by the Chairman, the arbitrator shall be appointed for a subsequent term unless 8 of 10 members of the Commission, including the Chairman, vote not to reappoint the arbitrator.

<u>All arbitrators shall be subject to the provisions of the Personnel Code</u>, and the performance of all arbitrators shall be reviewed by the Chairman on an annual basis.  The Chairman shall allow input from the Commissioners in all such reviews.  (emphasis added)

The provisions of the Personnel Code, regarding term appointments, 20 ILCS 415/8b.18 provide:

1.  During the term of the appointment Jurisdictions A, B, and C apply to the appointments. This means the appointee can be removed only for cause.

2.  There is no obligation to renew the term.

3.  Failure to renew the term is not grievable or appealable to the Civil Services Commission.

Public Act 97-0018 not only discharged the arbitrators it also set up a one-time appointment process.  For the first - and only - time the Governor selected the arbitrators subject to the advice and consent of the Senate.  820 ILCS 305/14  The arbitrators selected after July 1, 2011, shall serve staggered three year term appointments.  Once the terms expire appointment of arbitrators reverts to the appointment system in effect prior to July 1, 2011:  recommendation by the Chairman of the Commission to the Commission.  The Commission will then appoint the arbitrators.  820 ILCS 305/14

The arbitrators appointed after July 1, 2011, shall be subject to the provisions of the Personnel Code during their terms.  820 ILCS 305/14  That means discharge only for cause during the term.

Plaintiffs Hagan, Prieto, Peterson and Galacia have not been reappointed.  Plaintiff Akemann has been reappointed to a one year term so he will not be able to fully serve the term appointment he had before July 1, 2011.

None of the Plaintiffs has been given notice of any reasons for discharge for cause.  There is no indication any Plaintiff was incompetent, neglected his or her duties, committed malfeasance or any other act that could result in discipline.

No Plaintiff was given notice of the discharge nor afforded a pretermination hearing nor a post termination hearing.  P.A. 97 – 18 made no provision for such a hearing, nor did it limit its application to future appointments. Instead it was written to terminate the employment of the existing arbitrators and to give an opportunity for the Governor to make new appointments in an unprecedented change in the existing system of appointments by the Commission.

The legislative history of the bill is publicly available at the web site of the Illinois General Assembly. (See history and text of bill and amendments at:

http://www.ilga.gov/legislation/billstatus.asp?DocNum=1698&GAID=11&GA=97&DocTypeID =HB&LegID=58868&SessionID=84&SpecSess=    ).

 The origin of the legislation was House Bill 1698 whose only subject was the rights of putative fathers in relation to possible adoption. The original bill was introduced on February 16, 2011 and had the customary floor debate and committee hearings. The bill passed the House on March 10 and was introduced in the Senate a few days latter. It progressed through the Judiciary Committee since it dealt with civil process in Illinois courts. On May 26 the bill was amended in the Senate to delete all of its provisions and insert instead a 142 page bill with the so-called Workers' Compensation Act

*FELDMAN, WASSER DRAPER & COX*
1307 S. Seventh St.
Springfield, IL 62703

reforms. It went to no committee hearings and was passed in the Senate 2 days later and received House concurrence on May31, 2011.

## ARGUMENT

### Legal Standard

The facts are taken from the  allegations of the Complaint, which the Court must  accept as true in analyzing the Motion to Dismiss. See *Hager v. City of West Peoria,* 84 F.3d 865,  868-69 (7th Cir. 1996); *Covington Court, Ltd.  v. Village of Oak Brook,*  77  F.3d  177,  178 (7th Cir. 1996).All well plead allegations of the complaint must be taken as true and all reasonable inferences drawn in favor of the plaintiff. *Zemke v. Chicago,* 100 F. 3d 511 (7th Cir. 1996). A complaint should not be dismissed  when it alleges sufficient allegations to raise a right to relief and is not just speculation as conceded by defendants at p. 4 of their Memorandum of Law in Support of Motion to Dismiss [d/e15, p4]. In the prior ruling on the Motion for Preliminary Injunction, the court found that plaintiffs had not only pled but had evidence sufficient to support their claim that they had a property interest in their employment. There is no question that their employment was terminated under the authority of the challenged legislation. The allegations which cannot be contested claim that no cause for termination exists (stipulated to for the purposes of the Motion for Preliminary Injunction) and that the plaintiffs were afforded no notice nor hearing.

While the parties disagree on the due process analysis addressed below, it cannot be claimed that the Complaint fails to  state a claim for which relief can be granted. At a minimum, this court will be  required  to  analyze  the  due  process  protections  attendant  upon  this  deprivation  of employment property interests. The legal analysis of whether the due process requirements were

satisfied is a matter separate from the question of whether sufficient allegations are put before the court to allow the case to proceed to the legal issues.

**COUNT I**

**1.      The Commission defendants are necessary parties and are properly named.**

The question of who is a proper party to represent the interests of a State when an action if filed seeking injunctive relief against public officials was answered recently. The standard applied since *Ex parte Young*, 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908) has been a straightforward test of determining which public officials have some connection with the enforcement of the act. *Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 644-45 (7th Cir. 2006). Here, the plaintiffs were all employees of the Workers' Compensation Commission (before and after passage of P.A. 97–18). Even under the reform legislation, the Commission is the employer. Defendant Quinn had only one opportunity to appoint arbitrators. He has done that under the power of the Act. Thereafter, the Act provides that the Commission supervise, train, evaluate and make decisions on re-appointments as well as the power to discipline. For any injunctive relief to be enforced, there will need to be the cooperation of the Commission in effectuating the judgment of the court.

Notably, this "some connection" test does not depend upon specific powers being delegated under the challenged litigation. Further, this same connection to enforcement avoids any argument that there is any Eleventh Amendment immunity. *Id.*

In addition, the Commission as a whole, being the employer, is the entity that terminated the employment of the plaintiffs pursuant to the new public act. The letter informing arbitrators, including plaintiff Hagan was sent on the stationery of the Commission and signed by defendant

Mitch Weisz as shown in Exhibit 2 to this Response. Attached as Ex. 2 is the letter dated October 14, 2011. While not attached to the Complaint since it was not yet in existence, this exhibit dispels the claim of the individual Commissioners that they have no involvement in carrying out the provisions of the legislation.

**2.      Governor Quinn does not have immunity.**

The motion to dismiss mischaracterizes the Complaint and the arguments made about the Governor as a party. No claim is made that the Governor has any liability for his legislative action in approving or vetoing legislative proposals alone. As is clear from the legislation quoted in the Complaint, however, he has a definite connection to the deprivation in that the challenged Act empowers the Governor to take the final step that causes the deprivation of property. Under the Act, the terms of employment came to an official end on July 1, 2011 and while the incumbents would continue to serve temporarily, that continued service lasted only until the Governor made appointments to fill all of the now vacant positions. It is the Governor who is charged with, and in fact did, accomplish the final steps of termination. Even if the Governor had appointed all of the plaintiffs under this new authority, that action only would affect the damages since the terms of employment under the prior version of the Workers Compensation Act were altered.

As noted above for the individual Commissioners, there can be no doubt from the allegations of the Complaint including the Governor's own press releases and his actions in using the appointment power in P.A. 97–18 that he has personally taken action of an executive power to appoint arbitrators of his own choosing. His personal conduct brought to completion the termination of all employment of the plaintiffs. Under the analysis of *Entm't Software Ass'n v. Blagojevich*, 469

F.3d 641, 644-45 (7th Cir. 2006), his conduct is sufficient to make him a party and to defeat his claim of immunity.

**3.      P.A. 97 – 0018 deprived plaintiffs of property without due process.**

Re Due Process Rights

In *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694 (1972), the Plaintiff was a professor at a state college.   He had served in his position for ten years, the last four of which were under a series of four one-year contracts.  Sindermann had testified critically of the policies of the college at committees of the state legislature.  The college had no tenure system.  When his contract was not renewed he sued claiming his rights to free speech and due process guaranteed by the United States Constitution had been violated.

In its decision the Supreme Court reiterated its prior rulings that non-renewal of a nontenured teacher's contract cannot be predicated on exercise of freedom of speech protected by the First Amendment.

The Court went on to address Sindermann's due process claim.  The Court held that if the college had a *de facto* tenure system Sindermann had a property interest in his employment and was entitled to due process when his contract was not renewed.  The Court made clear that there was no doubt a tenured teacher had a property right and was entitled to due process.

In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487 (1985), the Plaintiff, a security guard, was a "classified" public employee, and by statute, could only be fired for cause.   State law also provided him with an administrative review at the civil service commission.   After he was discharged for falsifying his job application he filed for that administrative review.  The commission upheld his dismissal nine months later.

*FELDMAN, WASSER DRAPER & COX*
1307 S. Seventh St.
Springfield, IL 62703

Loudermill filed in federal court claiming he was not given a pre-dismissal opportunity to refute the charges nor a prompt postremoval hearing.

The district court dismissed the complaint because

> The very statute that created the property right in continued employment also specified the procedures for discharge, <u>and because those procedures were followed, Loudermill was, by definition, afforded all the process due</u>.  470 U.S. at 536.  (emphasis added)

The Supreme Court proceeded to hold that the state statute plainly created a property interest in Loudermill's appointment.

The Supreme Court then <u>rejected</u> the conclusion that because the entitlement

> <u>arose from a state statute, the legislature had the prerogative to define the procedures to be followed to protect that entitlement</u>.  470 U.S. at 541.  (emphasis added)

Quoting *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633 (1974), the Supreme Court went on to hold

> The right to due process "is conferred, not by legislative grace, but by constitutional guarantee.  <u>While the legislature may elect not to confer a property right in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards</u>."  470 U.S. at 541 (emphasis added)

Citing numerous previous opinions the Court then held due process required some type of hearing before discharge: notice and an opportunity to be heard.  The Court also held the nine month delay in the civil service commission's decision was not, of and by itself, unconstitutional.

In this case the Defendants agree the Personnel Code conferred a property interest in Plaintiffs' employment as arbitrators.  In the Court's Opinion of July 29, 2011, this Court indicated

> Plaintiffs have shown a strong likelihood that they have a property interest in their employment. [ Opinion  d/e 12,  p. 15. ]

*FELDMAN, WASSER DRAPER & COX*
1307 S. Seventh St.
Springfield, IL 62703

But this Court went on to hold that the legislature had the power to change the duration of employment and "the legislature process provided Plaintiff with all the process they were due." [Opinion  d/e 12,  p. 16 ]

Plaintiffs submit this directly contradicts the holding in <u>Loudermill</u>, *supra*, that once the legislature confers a property interest the legislature <u>cannot</u> authorize the deprivation of that interest without procedural safeguards.  Plaintiffs were given no notice, no pretermination hearing, no posttermination hearing.

Plaintiffs submit that part of the Act which discharged them without due process of law is unconstitutional.

This is not to say that once Hagan and Galacia resign or retire the legislature cannot change the method of replacing them or decide whether or not their successors have the protection of the Personnel Code.  Once Prieto's, Peterson's, and Akemann's current terms expire the same is true. Then the legislature can determine how to replace them and what, if any, property rights they have.

What kind of due process did the Plaintiffs receive in the legislature?  As outlined in the Statement of Facts, the legislative history of the reform bill demonstrates that the legislative process provides no process at all when it comes to the specific action of terminating employment. This is not just a case about some legislative benefit that might be changed in a prospective manner like the anticipation of social government benefits. This bill singled out the small group of Arbitrators and fired them. This is not about some change in the general qualifications of a large class of some profession. House Bill 1698 as introduced on February 16, 2011 was a bill dealing with the rights of putative fathers in relation to adoption proceedings. No part of the original bill addressed any worker's compensation issue throughout its movement through the committee hearings and

advancement to the Senate. Only upon second reading in the Senate was the bill amended to include Senate Amendment 3 that made the legislative proposal at issue here. That happened on May 26, 2011 by deleting <u>all</u> of the original bill and replacing it with 142 pages of new material. There were no committee hearings after that nor opportunity for public input. Five days later, H.B. 1698 was approved by the Senate, returned to the House for concurrence and passed after the Memorial Day holiday on May 31, 2011.

There was <u>no notice</u> to any of the arbitrators. There was <u>no opportunity for hearing</u> for any of the arbitrators. There was nothing to satisfy the due process requirements under the balancing test of *Mathews v. Eldridge*.424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

In their memorandum of law, defendants rely on a number of Illinois court decisions to address the due process issues. Those cases are either inapplicable or do not properly address the requirements of the Due Process clause.

In *People ex rel. Sklodowski v. State of Illinois*, 182 Ill.2d 220 (1998), the Plaintiffs claimed the State had not complied with the statutory funding system of state pensions, that the 1970 Illinois Constitution obligated the State to adequately fund the pensions.  The retirement systems joined the Plaintiffs' claims.  While the suit was pending a new statute was enacted lowering the level of contributions to the state pension funds and extending the number of years to fund the pension.  The Court held the 1970 Illinois Constitution created a right to benefits, not a right to any level of funding.  Plaintiffs simply fail to see how interpretation of the 1970 Illinois Constitutional provisions on pensions is relevant to this case.  The Court recognized a protected Illinois constitutional right, just not the right claimed.

*FELDMAN, WASSER DRAPER & COX*
1307 S. Seventh St.
Springfield, IL 62703

In *Grobsmith v. Kempiners*, 88 Ill.2d 399, 58 Ill.Dec. 722 (1982), state employees grade 12 and above challenged conversion of their positions under the Personnel Code from no discharge without cause to four year term appointments.  The Court noted the <u>*Sindermann*</u> line of cases and said

> Those cases may be relevant to issues which might arise upon failure to appoint members of Plaintiffs' class to new terms.  58 Ill.Dec. at 724

That is exactly the situation in this case.  Four of the five Plaintiffs were not appointed to the new terms.  The one who was reappointed was appointed to a term less than what he had before July 1, 2011.  The Illinois Supreme Court recognized the situation in this case.

Plaintiffs note the cases cited as authority in *Grobsmith* predate *Sindermann*: *Higgenbottom*, 1939, *Jordan*, 1958, *Grover*, 1937.

*Fumarolo v. Chicago Board of Education*, 142 Ill.2d 54, 153 Ill.Dec. 177 (1991), dealt with the Chicago School Reform Act.  Citing both the *Roth* and *Sindermann* cases the Court held principals and district superintendents had property interests in their employment and, therefore, were entitled to due process before their employment could be reduced to four year terms.  The Court went on to note there was notice of the intended legislation, that various groups were involved in drafting the legislation and testifying about it.  The implied assumption is the Plaintiffs had the opportunity to be heard.  But whether this provides the due process required by *Sindermann* remains to be seen.

These state cases are not directly on point.  The underlying issue in this case is that when a property right exists what process is due.  While state law creates the property right it is federal standards that determine what process is due when a property right exists.  Due process under the federal standard requires at a minimum prior notice of and reasons for discharge and a meaningful

opportunity to be heard. *Schultz v. Baumgart*, 738 F.2d 231, 235 (7th Cir. 1984). *Patkus v. Sangamon - Cass Consortium*, 769 F.2d 1251, 1265 (7th Cir. 1985)

In its opinion denying the preliminary injunction this Court assumed the Illinois general assembly could determine what process was due. Plaintiffs submit that is not correct, that under *Sindermann* and its progeny it is federal standards that determine what process is due: notice, an opportunity to be heard both before and after discharge.

This Court should not hold the general assembly can enact an unconstitutional statute, that those in the executive branch can implement the unconstitutional statute - and the Plaintiffs have no recourse. The due process clause of the Fourteenth Amendment must be applied in this case.

## COUNT II

### The allegations of Count II sufficiently state a claim.

In Count II, the plaintiffs have properly alleged all of the facts necessary to state a claim for relief. It is important to remember that in this motion to dismiss, the allegations of fact that are alleged in the complaint must be taken as true. This is not the time when the sufficiency of the evidence is judged. Instead the question that is presented is whether the plaintiffs have alleged the facts that are required. Defendants point to *Johnson v. Martin*, 943 F.2d 15 (7th Cir. 1991) as the case establishing the standards for pleading a" stigma plus" First Amendment claim. Notably, the *Johnson* case dealt only with the question of whether or not the stigmatizing information was publicly disclosed. The allegations in the complaint revealed that the supposedly stigmatizing information was merely kept in the personnel file and it was sheer speculation whether any of that information would be disclosed publicly. Nevertheless, the plaintiffs have alleged that the conduct of defendant Quinn in his issuance of the press release was stigmatizing. Obviously, that a press

release was issued makes the information satisfy the second requirement. Finally, not only did the plaintiffs lose their current employment, they have alleged that they have suffered a damage to their reputation that will impair opportunities for future employment.

Not only are the factual allegations of the complaint to be taken as true for the purposes of this motion, but reasonable inferences that may be drawn from the facts must be considered in ruling on a motion to dismiss. The press release attached to the complaint and the allegations must be considered against the backdrop of the news accounts that the Worker's Compensation Commission needed to be reformed, in part, because there was something wrong with the arbitrators. Gov. Quinn's own press release claimed that the termination of employment of the arbitrator's was part of the "reforms [that] will tackle the problems of the Worker's Compensation Commission." Quite clearly, a fair reading of that press release identifies the current arbitrators as a problem that needed reformation. Given the position of authority inherent in the office of arbitrator, an accusation of this kind can be clearly very damaging to the reputation, and employability of the plaintiffs. The sufficiency of the evidence will have to be tested at a later time, and cannot be dismissed simply based upon the pleadings.

The context of the press release must be reviewed with an understanding of the plaintiffs' Personnel Code positions. Under the terms of employment of the plaintiffs, discharge could only happen for just cause. This means that the plaintiffs would have had to be proven to have violated serious policies or engaged in serious misconduct in order to be discharged. The press release clearly suggested that the arbitrators as a group had to be reformed and terminating the current incumbents was a part of that reform. Since plaintiffs could only be discharged for cause, the clear implication was that they collectively had done so. At a minimum, the announcement that the new appointees

would be vetted carefully made it clear that any current arbitrators who would not be appointed must have done something wrong which is what led to the need for the "reform" to include getting rid of the existing Arbitrators. In this context particularly, the plaintiffs stood accused of conduct that justified terminating their employment immediately and taking from them the remainder of their protected terms of employment. Plaintiffs believe that the evidence that is consistent with these facts will show that the press release was properly understood to indicate the Governor's actions taken against arbitrators as a result of allegations of misconduct. The stigma of the allegations that the Workers' Compensation system was broken due to actions by the arbitrators was cast on the plaintiffs in the same course of events that led to the termination of their employment.

## COUNT III

### The allegations of Count III state a claim for declaratory and injunctive relief.

At page 16 of the memorandum of law filed by defendants, there is no real argument that the plaintiffs' complaint does not properly seek declaratory and injunctive relief. The argument on this point apparently only seeks to clarify that Count III is not independent of the allegations of count I. Plaintiffs agree that Count III is intended to simply state the basis for seeking the declaratory and injunctive relief based upon the common allegations that support Count I. Whether this court treats the allegations of Count III as a basis for relief under Count I, or let it stand independently, is of little importance. In an effort to clearly breakout each theory, Count III was separated because it seeks a specific declaration that the provisions of PA 97 – 18 are unconstitutional as to the provisions dealing with arbitrators. Defendants have not stated a basis for dismissing Count III, but have merely acknowledge that declaratory and injunctive relief is an available remedy if a proper claim has been stated under Count I.

**ELEVENTH AMENDMENT**

**There Is No Immunity under the Eleventh Amendment for the Declaratory and Prospective Injunctive Relief.**

The Eleventh Amendment has routinely been found not to preclude a suit against a public official in his official capacity for appropriate prospective injunctive relief that is based on a claim that the official's actions are unconstitutional. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974).

Not only has this legal principle withstood numerous challenges over the years, but it has been re-affirmed even as to the proper parties in this cause. As noted above, public officials who have a nexus to the enforcement of legislation may be made defendants for prospective relief without offending the Eleventh Amendment. This was recently re-affirmed in *Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 644-45 (7th Cir. 2006) where the Seventh Circuit rejected arguments similar to those presented here.

At the hearing on Plaintiffs' Motion for Preliminary Injunction, arguments were made that there was no right for relief since none of the plaintiffs had yet lost employment. Now Defendants claim that there is no basis for declaratory and injunctive relief because the damage has already been suffered and is in the past. Such niceties in philosophy only cloud the reality. If, as plaintiffs claim, P.A. 97 – 18 is unconstitutional in the provisions that are under challenge, then the individuals appointed by the Governor are holding office unlawfully and the plaintiffs remain officially appointed in accordance with their terms of office. This usurpation of power can properly and

*FELDMAN, WASSER DRAPER & COX*
1307 S. Seventh St.
Springfield, IL 62703

correctly remedied only by the declaratory and injunctive relief sought. This is more than mere employment given the offices (and not just jobs) that the Workers' Compensation Act created.

Plaintiffs have properly alleged facts that entitle them to complete their terms of office. As such, they have pled facts that entitle them to be restored to their official positions. Injunctive relief to obtain reinstatement is a common remedy when there is an ongoing violation of federally protected civil rights. For example it was a sufficient basis for reinstatement in a college in *Doe v. Bd. of Trustees of Univ. of Illinois*, 429 F. Supp. 2d 930, 940-41 (N.D. Ill. 2006). (see also cases cited therein).

The violation of plaintiffs rights arises from the reliance by Illinois public officials to unlawfully prevent plaintiffs from completing their terms of office and allowing others to replace them. If plaintiffs prevail in this claim, the outcome will be that the new appointees have assumed the office of arbitrator in an unconstitutional manner. Full relief would include an injunction to restore plaintiffs to their offices.

Plaintiffs have already discussed *Entm't Software Ass'n v. Blagojevich, supra.,* in which the Seventh Circuit squarely applied existing law to deny an Eleventh Amendment defense brought by Attorney General Madigan. the test followed in that opinion stated:

> Moreover, the Supreme Court has instructed us that, "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a '˜straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Verizon Md., Inc. v. Public Serv. Comm'n of Md.,* 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)) (brackets omitted). Such an inquiry leads us to the conclusion that the Attorney General is not immune. We therefore affirm the district court's sovereign immunity ruling.

*FELDMAN, WASSER DRAPER & COX*
1307 S. Seventh St.
Springfield, IL 62703

*Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 644-45 (7th Cir. 2006). As in that case, plaintiffs have alleged an ongoing violation of their rights to complete their service to the appointed offices of arbitrators and to remove those who were appointed under provisions of the law that violate the Fourteenth Amendment.

## QUALIFIED IMMUNITY

### Defendants are not entitled to qualified immunity from damage claims.

Qualified immunity shields "[g]overnment actors performing discretionary functions" from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sallenger v. Oakes,* 473 F.3d 731, 739 (7th Cir. 2007). To overcome qualified immunity, a plaintiff must demonstrate: (1) a violation of a constitutional right (2) that is clearly established at the time of the alleged violation, so that a reasonable public official would have known that his conduct was unlawful. *Green v. Butler*, 420 F.3d 689, 700 (7th Cir. 2005); see also *Saucier v. Katz,* 533 U.S. 194, 200-02 (2001). To meet this burden, plaintiffs "may point to closely analogous cases demonstrating that the conduct is unlawful or demonstrate that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution." *Green*, 420 F.3d at 700 (internal quotations and citation omitted).

Plaintiff seeks injunctive relief against all of the Defendants. The Seventh Circuit has recognized that "[t]he doctrine of qualified immunity does not apply to claims for equitable relief." *Denius v. Dunlap*, 209 F.3d 944, 959 (7th Cir. 2000) (citing cases). Therefore, the doctrine of qualified immunity does not bar Plaintiffs' claims against. The appellate courts have clearly held

that qualified immunity is not an issue in a case seeking an injunction rather than monetary damages.

The Seventh Circuit explained it this way:

> An action for prospective injunctive relief against a state official is brought properly in the official's *official* capacity. As the court noted in *Scott v. Lacy*, 811 F.2d 1153 (7th Cir.1987):
>
>> As a practical matter, a public official who is a defendant in a suit seeking an injunction is not "on trial" at all. The suit seeks relief against him in his official capacity; he need not attend the trial, which will be conducted by attorneys representing the governmental body. If he leaves office during the interim, he leaves the case behind and his successor becomes the party. *Id.* at 1153-54. Therefore, we need not deal extensively with the district court's conclusion that the doctrine of qualified immunity can shield a defendant from suit seeking injunctive relief in his individual capacity. We only note that the Supreme Court has only applied the immunity doctrine in suits for damages. See *Harlow*, 457 U.S. at 806, 102 S.Ct. at 2732 ("[O]ur decisions consistently have held that government officials are entitled to some form of immunity from suits for damages."). At least three courts of appeals have explicitly noted that qualified immunity is inapplicable to actions seeking equitable relief. See, e.g., *De Abadia v. Izquierdo Mora*, 792 F.2d 1187, 1188 n. 1 (1st Cir.1986) ("Qualified immunity is, of course, no defense to equitable relief."); *Tubbesing v. Arnold*, 742 F.2d 401, 403-04 (8th Cir.1984) ("[T]he Board members' qualified immunity defense would entitle them to summary judgment only on the damages' claims. The Board would still be required to defend itself in any trial involving Tubbesing's claim for equitable relief."); *Bever v. Gilbertson*, 724 F.2d 1083, 1086 (4th Cir.) ("[T]he appellants have no immunity from being put to trial on the equitable claims."), *cert*. denied, 469 U.S. 948, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984).

*Akins v. Board of Governors of State Colleges and Universities* 840 F.2d 1371, 1377 – 1378 (7th Cir. 1988) (Reversed as to other plaintiffs only on other procedural grounds:  *Board of Governors of State Colleges and Universities v. Akins*, 488 U.S. 920, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988).

There can be no question about the property interest that plaintiffs had in their employment. There can be no dispute that they have not engaged in any conduct that would constitute cause for

*FELDMAN, WASSER DRAPER & COX*
1307 S. Seventh St.
Springfield, IL 62703

removal, which is the standard that applies under the Personnel Code. As shown above in Part 3., the law that forbids property interests in employment to be taken without prior notice and an opportunity to be heard have been established in the law for decades. This is not a case that deals with a legislative change to a statutory right: it is a case of abusing the legislative process to fire the existing 31 arbitrators and to give the Governor a single opportunity to replace them with people of his own choosing. There was no change in the property interests in the Personnel Code since that existing law remained unchanged. Likewise the rights of arbitrators under both the prior version of the Act and under P.A. 97–18 remained the same. The only thing accomplished by the challenged provision of the legislation was the termination of employment. The law has been firmly established since *Loudermill, supra*. that termination of such employment violates the Due Process guarantees of the Fourteenth Amendment.

## CONCLUSION

When the court or the public review the legislation and the facts that are not only alleged but are likely to be uncontested at trial, there is only one common sense conclusion about what happened. The plaintiffs, as arbitrators, were singled out for termination and not part of any change in the Personnel Code protections of employees. Since the "reform legislation" did not, in fact alter the protections of Arbitrators under the Personnel Code, the only thing that P.A. 97–18 did was to selectively fire the plaintiffs in order to allow the Governor an opportunity to appoint others of his choosing.

The inference from these facts, and indeed, the only rational conclusion is that P.A. 97 – 18 was used as a means to fire unwanted arbitrators when their civil service protections precluded discharge except upon proof that they were guilty of misconduct. They had done nothing wrong and

the independence that their office required was bypassed with a political action to take away their jobs and replace them with the Governor's chosen appointees.

Nothing in the legislative process satisfied any sense of "notice and an opportunity to be heard," as has always been the cornerstone of the due process guarantees of the Fourteenth Amendment. This part of the law was not "reform" of the Personnel Code. It was instead an isolated act to take away those rights and to give them instead to other appointees. Plaintiffs have more than adequately pled a claim that P.A. 97–18 is unconstitutional and that the actions of the defendants deprived them of their property rights in their employment without due process. For this they are entitled to the declaratory and injunctive relief requested as well as compensatory damages for this civil rights violation. The Motion to Dismiss must be denied.

KATHLEEN A. HAGAN,  JOSEPH V. PRIETO, RICHARD A. PETERSON, PETER AKEMANN, and GILBERTO GALICIA,

Plaintiffs

By:  */s Carl R. Draper*
Carl R. Draper, Bar Number 03128847
Attorney for Plaintiffs
Feldman, Wasser, Draper & Cox
1307 S. Seventh Street, P.O. Box 2418
Springfield, IL 62705
Telephone: (217) 544-3403
Fax: (217) 544-1593
e-mail: cdraper@feldman-wasser.com

Mary Lee Leahy, 1599534
Co-counsel for Plaintiffs
Leahy Law Offices
308 E. Canedy St.
Springfield IL 62703-2202
217-522-4411
leahylaw@ameritech.net

*FELDMAN, WASSER*
*DRAPER & COX*
1307 S. Seventh St.
Springfield, IL 62703

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2011 , I presented the foregoing Response to Motion to Dismiss to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following:

Karen McNaught and
Terence J. Corrigan
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
Telephone: (217) 782-1841
Facsimile: (217) 524-5091
kmcnaught@atg.state.il.us
tcorrigan@atg.state.il.us

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

NONE

*/s Carl R. Draper*
Carl R. Draper, Bar Number 03128847
Attorney for Steve Whitlow, *et al*, Plaintiffs
Feldman, Wasser, Draper & Cox
1307 S. Seventh Street, P.O. Box 2418
Springfield, IL 62705
Telephone: (217) 544-3403
Fax: (217) 544-1593
e-mail: cdraper@feldman-wasser.com

*FELDMAN, WASSER*
*DRAPER & COX*
1307 S. Seventh St.
Springfield, IL 62703