# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

KATHLEEN A. HAGAN, JOSEPH PRIETO,    )
RICHARD A. PETERSON, PETER AKEMANN,  )
and GILBERTO GALICIA,                )
                                     )
    Plaintiffs,                      )
                                     )
    v.                               )    No.  11-3213
                                     )
PATRICK J. QUINN, Governor of Illinois,    )
MITCH WEISZ, Chairman of the Illinois      )
Workers' Compensation Commission,        )
MARIO BASURTO, KEVIN LAMBORN,        )
YOLAINE DAUPHIN, NANCY LINDSAY,      )
JAMES DEMUNNO, MOLLY MASON,          )
DAN DONOHOO, THOMAS TYRRELL, and     )
DAVID GORE, Commissioners of the Illinois  )
Workers' Compensation Commission,          )
                                     )
    Defendants.                      )

## OPINION

SUE E. MYERSCOUGH, United States District Judge.

This cause is before the Court on the Motion to Dismiss filed by

Defendants Patrick J. Quinn, Governor of Illinois; Mitch Weisz,

Chairman of the Illinois Workers' Compensation Commission; and the

following commissioners of the Workers' Compensation Commission:

Mario Basurto, Kevin Lamborn, Yolaine Dauphin, Nancy Lindsay, James Demunno, Molly Mason, Dan Donohoo, Thomas Tyrrell, and David Gore (d/e 14).  Defendants move this Court to dismiss Count I because (1) Plaintiffs fail to allege the personal involvement of the Commission defendants, (2) Governor Quinn is entitled to absolute immunity, and (3) the legislature could constitutionally alter Plaintiffs' terms in office. Defendants move to dismiss Count II and Count III for failure to state a claim.  In addition, Defendants assert that they are entitled to qualified immunity and that the Eleventh Amendment bars Plaintiffs' claims for declaratory and injunctive relief.  Because Plaintiffs have stated a plausible claim and because issues remain as to whether Defendants are entitled to immunity or whether the Eleventh Amendment bars Plaintiffs' claims, the Motion is DENIED.

## I.  BACKGROUND

On July 12, 2011, Plaintiffs, Kathleen A. Hagan, Joseph V. Prieto, Richard A. Peterson, Peter Akemann, and Gilberto Galicia, who at that time were arbitrators on the Illinois Workers' Compensation Commission

(Commission), filed a three-count Complaint pursuant to 42 U.S.C. § 1983 against Defendants in their individual and official capacities. Plaintiffs filed the Complaint after the enactment of Public Act 97-18, signed into law by Governor Quinn on June 28, 2011, which contained reforms to the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1, et seq.). One of the provisions of the new legislation provided that Plaintiffs' terms of office as arbitrators expired effective July 1, 2011.

The Complaint alleged as follows. Hagan had been appointed to the position of arbitrator effective July 1989, and Galicia was appointed in 1984. Hagan's and Galicia's appointments, in accordance with State law at the time, had no set termination date, and they served under the protections of the Illinois Personnel Code (20 ILCS 415/1, et seq.), which provided that they could only be removed for just cause.

Prieto, Peterson, and Akemann were appointed after 1989 and reappointed at various points thereafter for six-year terms. Prieto was last appointed in 2008, Peterson in 2009, and Akemann in 2006. Their appointments, in accordance with State law at that time, had the

protections of the Illinois Personnel Code, including protection that they could only be removed for just cause during their six-year term.

After July 2005, and before the enactment of Public Act 97-18, the Act provided that arbitrators were appointed to specific terms of office subject to reappointment:

> Each arbitrator appointed after the effective date of this amendatory Act of 1989 shall be appointed for a term of 6 years.  Each arbitrator shall be appointed for a subsequent term unless the Chairman makes a recommendation to the Commission, no later than 60 days prior to the expiration of the term, not to reappoint the arbitrator.  Notice of such a recommendation shall also be given to the arbitrator no later than 60 days prior to the expiration of the term.  Upon such recommendation by the Chairman, the arbitrator shall be appointed for a subsequent term unless 8 of 10 members of the Commission, including the Chairman, vote not to reappoint the arbitrator.

820 ILCS 305/14.  Plaintiffs allege that by virtue of this provision and the Personnel Code, Plaintiffs have a protected property interest in their employment as arbitrators.  See Cmplt. ¶ 15.

On June 28, 2011, Governor Quinn signed into law House Bill

1698, effective immediately on that date as Public Act 97-18.  Public Act

97-18 removed the provision cited above (pertaining to six-year terms)

and added the following provision, which sets up a one-time appointment

procedure:

> Notwithstanding any other provision of this
> Section, the term of all arbitrators serving on the
> effective date of this amendatory Act of the 97th
> General Assembly, including any arbitrators on
> administrative leave, shall terminate at the close of
> business on July 1, 2011, but the incumbents shall
> continue to exercise all of their duties until they
> are reappointed or their successors are appointed.
>
> On or after the effective date of this amendatory
> Act of the 97th General Assembly, arbitrators shall
> be appointed to 3-year terms by the full
> Commission, except that initial appointments
> made on and after the effective date of this
> amendatory Act of the 97th General Assembly
> shall be made as follows:
>
>> (1) All appointments shall be made by
>> the Governor with the advice and
>> consent of the Senate.
>>
>> (2) 12 arbitrators shall be appointed to
>> terms expiring July 1, 2012; 12
>> arbitrators shall be appointed to terms
>> expiring July 1, 2012; and all
>> additional arbitrators shall be

appointed to terms expiring July 1, 2014.

Upon expiration of a term, the Chairman shall evaluate the performance of the arbitrator and may recommend that he or she be reappointed to a second or subsequent term by the full Commission.

In addition, the amendments require that all arbitrators who had not previously served as arbitrators be authorized to practice law in Illinois.

The Act, as amended, still provides that "[a]ll arbitrators shall be subject to the provisions of the Personnel Code," but now also states: "The changes made to this Section by this amendatory Act of the 97th General Assembly shall prevail over any conflict with the Personnel Code."

Plaintiffs' Complaint contains three claims: (1) deprivation of a property interest without due process (Count I), brought against all Defendants; (2) deprivation of a liberty interest without due process (Count II) brought against Governor Quinn; and (3) a claim for injunctive and declaratory relief (Count III) brought against all Defendants.  In Count I, Plaintiffs allege that their due process rights

were violated by the legislation because they were deprived of a property interest in their jobs without due process of law.  Plaintiffs allege that they were not given notice of any charges that would constitute legal cause for terminating their employment.  They further allege that Defendants did not provide Plaintiffs with any pretermination hearing prior to termination of their employment and the Act did not provide for any notice or opportunity for a hearing prior to termination of their terms of office.

In Count II, Plaintiffs allege they lost their liberty interests in their offices as arbitrators without due process of law.  Plaintiffs point to the press release issued by Governor Quinn when he signed Public Act 97-18 into law, which Plaintiffs attached to the Complaint.  According to Plaintiffs, the comments made by Governor Quinn that "'reform'" was needed, including "'strict performance evaluations,'" cast Plaintiffs in a false light because the former Act required the Commission Chairman to provide annual evaluations of each arbitrator and the Chairman failed to do so.

In Count III, Plaintiffs ask the Court to declare Public Act 97-18 unconstitutional and to enter a permanent injunction prohibiting Defendants from enforcing Public Act 97-18 on Plaintiffs.

When Plaintiffs filed their Complaint, they also filed a Motion for Preliminary Injunction based on the alleged denial of their property interest in their jobs as arbitrators.  In July 2011, following a hearing, this Court denied Plaintiffs' Motion for Preliminary Injunction.  See d/e 12. This Court found that Plaintiffs failed to demonstrate (1) a likelihood of success on the merits, (2) that they had no adequate remedy at law, and (3) that they would suffer irreparable harm if the preliminary injunction was not granted.  The Court further found that even if Plaintiffs had established some likelihood of success on the merits, no adequate remedy at law, and irreparable harm, the balance of factors did not weigh heavily in Plaintiffs' favor.

In September 2011, Defendants filed the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) at issue herein. This Court takes judicial notice that, as indicated by an October 14,

2011 press release, Plaintiffs Hagan, Prieto, Peterson, and Galacia were
not reappointed as arbitrators.  Plaintiff Akemann was reappointed to a
one-year term[1].   See, e.g.,  Smith v. Housing Authority of Southbend,
744 F.Supp.2d 775, 785 (N.D. Ind. 2010) (noting that it was proper to
take judicial notice of historical documents, documents in the public
record, administrative bodies, and state court decisions without
converting a motion to dismiss to a motion for summary judgment);
Perez v. Comcast, 2011 WL 5237577, at* 2 (N.D. Ill. 2011) (taking
judicial notice of a Department of Labor press release).

## II. LEGAL STANDARD

Under Rule 12(b)(6), dismissal is proper where a complaint fails to
state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).
To state a claim upon which relief can be granted, a complaint must
provide a "short and plain statement of the claim showing that the
pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  That statement must
be sufficient to provide the defendant with "fair notice" of the claim and

---

[1] Plaintiffs assert that Akemann continues to have a claim because when he was removed
from his position, he actually had 18 months remaining on his six-year appointment.

its basis.  <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1081 (7th Cir. 2008);

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  This means

that (1) "the complaint must describe the claim in sufficient detail to give

the defendant 'fair notice of what the ... claim is and the grounds upon

which it rests" and (2) its allegations must plausibly suggest that the

plaintiff has a right to relief, raising that possibility above a "speculative

level."  <u>EEOC v. Concentra Health Services, Inc.</u>, 496 F.3d 773, 776 (7th

Cir.2007).  While detailed factual allegations are not needed, a

"formulaic recitation of a cause of action's elements will not do."

<u>Twombly</u>, 550 U.S. at 555.  Conclusory allegations are "not entitled to

be assumed true."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937,

1950 (2009) (citing <u>Twombly</u>, 550 U.S. at 544-55).  "In ruling on Rule

12(b)(6) motions, the court must treat all well-pleaded allegations as true

and draw all inferences in favor of the non-moving party."  <u>In re</u>

<u>marchFIRST Inc.</u>, 589 F.3d 901, 904 (7th Cir. 2009) (citing <u>Tamayo</u>,

526 F.3d at 1081).

## III.  ANALYSIS

In their Motion to Dismiss, Defendants ask this Court to dismiss

Count I on the grounds that (1) Plaintiffs fail to allege the personal

involvement of the Commission defendants, (2) Governor Quinn is

entitled to absolute immunity, and (3) the legislature could

constitutionally alter Plaintiffs' terms in office.  Defendants move to

dismiss Count II and Count III for failure to state a claim.  In addition,

Defendants assert that they are entitled to qualified immunity and that

the Eleventh Amendment bars Plaintiffs' claims for declaratory and

injunctive relief.

A.  <u>Count I: Due Process Claim Against All Defendants</u>

    1.    **Plaintiffs Have Alleged a Plausible Claim of Personal
Involvement of Commission Members in Plaintiffs' Removal**

Defendants argue Plaintiffs have failed to allege the personal

involvement of the Commission defendants – Weisz, Basurto, Lamborn,

Dauphin, Lindsay, DeMunno, Mason, Donohoo, Tyrrell, and Gore – in

the alleged deprivation of Plaintiffs' property interest in their offices.

Plaintiffs respond that the Commission defendants are necessary parties

and are properly named.  According to Plaintiffs, "[f]or any injunctive

relief to be enforced, there will need to be the cooperation of the Commission in effectuating the judgment of the court." Response to Motion to Dismiss, p. 8. Plaintiffs also assert that the Commission is the entity that terminated Plaintiffs.

"Liability under § 1983 must be premised on personal involvement in the deprivation of the constitutional right, not vicarious liability." Payne for Hicks v. Churchich, 161 F.3d 1030, 1042 n. 15 (7th Cir. 1998); see also Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation") (emphasis in original). However, a defendant need not directly participate in the violation if: (1) he "acts or fails to act with a deliberate and reckless disregard of [the] plaintiff's constitutional rights"; or (2) "the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir. 1986); see also Patterson v. Burns, 670 F.Supp.2d 837, 849 (S.D. Ind. 2009).

For purposes of the Motion to Dismiss, this Court finds that
Plaintiffs have alleged a plausible claim of personal involvement of the
individual Commission members in Plaintiffs' termination.  Specifically,
a reasonable inference can be drawn that Plaintiffs' termination occurred
at the Commissioners' direction or with their knowledge or consent.
Moreover, the Commissioners would, at the very least, remain in the
lawsuit as a necessary party in the event of reinstatement.  <u>See</u>, <u>e.g.</u>,
<u>McDonald v. Krajewski</u>, 649 F.Supp. 370, 372 (N.D. Ind. 1986)
(dismissing damages claim against the defendant but concluding that the
defendant was a necessary party because the defendant was the only
official that could reinstate the plaintiff if the court ordered
reinstatement).  Moreover, Defendants may raise this issue again in a
motion for summary judgment.

> ## 2.   Governor Quinn Is Not Entitled to Absolute Immunity on Count I for the Allegedly Non-Legislative Acts

Defendants next argue that Governor Quinn is absolutely immune
from the claims in Count I.  Defendants note that Plaintiffs claim they
were deprived of their property interest without due process by the

enactment of P.A. 97-18, which Governor Quinn signed into law. Defendants argue that because Governor Quinn acted in a legislative capacity by signing the P.A. 97-18  into law, he is entitled to qualified immunity.

Plaintiffs respond that "[n]o claim is made that the Governor has any liability for his legislative action in approving or vetoing legislative proposals alone."  Response to Motion to Dismiss, p. 9.  Plaintiffs assert that Governor Quinn had a connection to the deprivation due to his having made appointments to fill the positions, which constituted the final steps to the termination of Plaintiffs.  By so acting, Governor Quinn exercised his executive power to appoint arbitrators of his own choosing, which brought to completion the termination of Plaintiffs' employment.

In Bogan v. Scott-Harris, 523 U.S. 44, 53-54 (1998), the United States Supreme Court held that city council members were entitled to absolute immunity from § 1983 liability for "actions taken in the sphere of legitimate legislative activity."  In making this determination, the Court found that the council's action was legislative in substance because

their action "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." Id. at 55-56.  Additionally, the Court found that eliminating services (like the council did) was an appropriate use of authority "'in a field where legislators traditionally have power to act.'" Id. at 56.

This absolute legislative immunity does not apply only to legislators.  See Bogan, 523 U.S. at 55 ("officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions").  In fact, the Seventh Circuit has extended absolute immunity to "governors who are sued for their role in legislative activity." United States v. Blagojevich, 638 F.3d 519, 529 (7th Cir. 2011) (allegations that the governor "took bribes in exchange for influencing the state legislature to pass the Racing Acts and for signing the Acts into law" referred to acts that were legislative in nature; therefore, the governor was entitled to absolute legislative immunity), reh'g en banc granted in part, opinion vacated in part by 649 F.3d 799 (7th Cir. 2011).  In addition, absolute

legislative immunity applies to claims for declaratory and injunctive
relief, as well as claims for damages.   Supreme Court of Virginia v.
Consumers Union of the U.S., Inc., 446 U.S. 710, 732-33 (1980); Risser
v. Thompson, 930 F.2d 549, 551 (7th Cir. 1991).

"Whether an act is legislative turns on the nature of the act, rather
than on the motive or intent of the official performing it." Bogan, 523
U.S. at 54.  That is, whether an act is "legislative" requires an analysis of
whether the act was legislative in form and in substance.  Id. at 55 (act of
signing an ordinance into law was legislative in form; also noting that
ordinance was legislative in substance where it "bore all the hallmarks of
traditional legislation").

Here, Plaintiffs assert that Governor Quinn's appointment of new
arbitrators effectuated their termination and did not constitute legislative
action.  For purposes of this Motion to Dismiss, this Court agrees and
finds that Governor Quinn's appointment of the new arbitrators, which
effectuated Plaintiffs' termination, was not legislative in either form or
substance.  See, e.g., Acevedo-Garcia v. Vera-Monroig, 204 F.3d 1, 9 (1st

Cir. 2000) (finding no absolute immunity for the administrative

decisions involved in implementing the layoff plan after enactment of the

ordinance); <u>Myers v. Delaware County, Ohio</u>, 2008 WL 4862512, at *13

(S.D. Ohio 2008) (finding that the appointment of an individual as the

acting sheriff pursuant to state statute was administrative, not

legislative).  Defendants may again raise this issue in a motion for

summary judgment.

### 3.  Plaintiffs Have Stated a Plausible Claim in Count I

Defendants argue that because Plaintiffs "did not have a legitimate

claim of entitlement to the continuation of the statutory terms of

employment existing when they were employed" and "because their claim

to their positions ended on July 1, 2011," their due process claims must

fail.  Defendants further argue that the legislature's modification or

extinguishment of the right gave Plaintiffs all the process that is due.

Plaintiffs respond that legislation singled out a small group of

arbitrators and fired them.  Plaintiffs assert that only upon the second

reading of the bill in the Senate was the bill amended to include the

legislative proposal at issue here.  Specially, on May 26, 2011, the original bill was deleted and replaced with 142 pages of new material. Five days later, after no committee hearings were held and no opportunity for public input, the bill was approved by the Senate, returned to the House, and passed on May 31, 2011.

To state a claim for a violation of due process, Plaintiffs must allege that they had a protected property interest and were deprived of that property interest without due process of law.  See Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996) (court must ascertain whether the plaintiff had been deprived of a protected property interest and, if so, what process is constitutionally due).  Plaintiffs have alleged a property interest in their employment.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985) (Ohio employees classified as civil service employees who could only be dismissed for misfeasance had a property right in continued employment); Gorman v. Robinson, 977 F.2d 350, 356-57 (7th Cir. 1992) (finding protectible property interest where the housing authority employee could only be terminated for just cause).

Plaintiffs have also alleged they were deprived of their property interest without due process of law.  Defendants correctly note that a legislature may change the duration of the term of appointments and that the legislative process generally provides all the process that is due.  See Grobsmith v. Kempiners, 88 Ill. 2d 399, 404-05 (1982) (providing that there is "no constitutional impediment to the power of the General Assembly to change the duration of the term of the appointments or the method of fixing the time when presently existing terms would terminate"); Fumarolo v. Chicago Bd. of Educ., 142 Ill. 2d 54, 107 (1991) ("the legislative process itself created all the procedural safeguards necessary to provide the plaintiffs with due process"); McMurtray v. Holladay, 11 F.3d 499, 503-04 (5th Cir. 1993) (on summary judgment, finding that although the legislation extinguished the plaintiffs' property interest, the legislative process provided all the process that was due); Sykes v. City of Gentry, Ark., 114 F.3d 829, 830-31 (8th Cir. 1997) (same); Rea v. Matteucci, 121 F.3d 483, 485 (9th Cir. 1997) (same).

Nonetheless, some courts have recognized exceptions to this general

rule, such as where there is a procedural defect in the legislation or the
legislative act is adjudicatory as opposed to legislative.  See Story v.
Green, 978 F.2d 60, 63 (2d Cir. 1992) (reiterating that the general rule
that the legislature can alter or eliminate a right previously conferred
applies "absent any indication of some defect in the legislative process");
Campana v. City of Greenfield, 164 F.Supp.2d 1078, 1095 n. 11 (E.D.
Wis. 2001) (noting that the legislative process does not provide all of the
process due under the Due Process Clause if the legislature's action was
adjudicative in nature), aff'd, 38 Fed.Appx. 339 (7th Cir. 2002);
Conway v. Searles, 954 F.Supp. 756, 767 (D. Vt. 1997) (noting "a due
process claim is available when the legislature deprives property rights
with legislation targeted at a particular individual or group of individuals,
or that was adopted during the course of a legislative process that was
somehow defective").

Plaintiffs argue that the one-time extinguishment of these Plaintiffs'
property rights, along with what Plaintiffs characterize as an irregular
legislative process, violated their due process rights.  At this stage in the

litigation, the Court finds Plaintiffs have stated a plausible claim in Count I.

B.  Count II: Liberty Interest Claim Against Governor Quinn

In Count II, Plaintiffs alleged that Governor Quinn made comments in his press release that injured the reputation and good name of Plaintiffs and that those comments were made contemporaneously with the attempts to remove Plaintiffs from their positions as arbitrators. Plaintiffs argue this violated their liberty interests without due process of law.

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  Because an individual has no liberty interest in his reputation, "simple defamation by the government does not deprive a person of liberty within the meaning of the Due Process Clause."  Mihailovic v. Soldato, 2004 WL 528010, *2 (N.D. Ill. 2004); see also Doyle v. Camelot Care Centers, Inc., 305 F.3d 603, 617 (7th Cir. 2002).  However, "a government employee's liberty interests are implicated when

in terminating an employee, the government [(1)] makes any charge

against the employee that might seriously damage his or her standing or

association in the community or [(2)] impose[s] on him or her a stigma

or other disability that forecloses his or her freedom to take advantage of

other employment opportunities." Dziewior v. City of Marengo, 715

F.Supp. 1416, 1423 (N.D. Ill. 1989); see also Munson v. Friske, 754

F.2d 683, 693 (7th Cir. 1985) (noting that a liberty interest is implicated

when "the individual's good name, reputation, honor[,] or integrity are at

stake by such charges as immorality, dishonesty, alcoholism, disloyalty,

Communism[,] or subversive acts").  In such cases, due process requires

the individual be given an opportunity to refute the charges.  Board of

Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972).  To prevail

on a liberty cause of action, a plaintiff must show the following: that (1)

he was stigmatized by the defendant's conduct; (2) the stigmatizing

information was publicly disclosed; and (3) he suffered a tangible loss of

other employment opportunities as a result of the public disclosure.

Covell v. Menkis, 595 F.3d 673, 677-78 (7th Cir. 2010).

Defendants argue Plaintiffs cannot establish that Governor Quinn's comments were stigmatizing.  Defendants also assert that Plaintiffs cannot show that they have been foreclosed from working in their chosen profession.

Plaintiffs argue they have alleged all the facts necessary to state a claim for relief and that the  sufficiency of the evidence is not judged at this stage.  Specifically, Plaintiffs assert that they have alleged that the issuance of the press release by Governor Quinn was stigmatizing, the comments were made public, Plaintiffs lost employment, and they suffered damages.

This Court finds that at this stage in the litigation, Plaintiffs have alleged a plausible claim for relief.  Plaintiffs' allegations, the press release attached to the Complaint, and the reasonable inferences therefrom, taken in the light most favorable to Plaintiffs, are sufficient to defeat Defendants' motion to dismiss Count II for failure to state a claim.

C.    Count III: Injunctive and Declaratory Relief Against All Defendants

Defendants argue that Count III  fails to state a cause of action

because it merely seeks declaratory and injunctive relief based on the theories set out in other counts.  Defendants essentially assert that because Counts I and II do not state a claim, Plaintiffs are not entitled to the relief sought in Count III.

Plaintiffs argue that Count III was intended to state the basis for seeking declaratory and injunctive relief based on the common allegations that support Count I.  Plaintiffs assert that whether the Court treats Count III as a basis for relief under Count I or lets it stand independently is of little importance.

Given Plaintiffs' clarification and the Court's finding that Count I should not be dismissed, the Court will let Count III stand.

D.   At This Stage of the Litigation, Defendants Are Not Entitled to Qualified Immunity

Defendants also seek dismissal on the basis that they are entitled to qualified immunity on the claims against them in their individual capacity.  See Kentucky v. Graham, 473 U.S. 159, 166-67 (1985) (qualified immunity applies only to individual capacity claims). Specifically, Defendants argue (1) Plaintiffs have not demonstrated that

Defendants violated Plaintiffs' constitutional rights; and (2) even if the law does not amply demonstrate the constitutionality of Defendants' conduct, they are still protected because the law does not clearly establish that any action taken by Defendants violated Plaintiffs' constitutional rights.

Plaintiffs respond that "[t]his is not a case that deals with a legislative change to a statutory right; it is a case of abusing the legislative process to fire the existing 31 arbitrators and give the Governor a single opportunity to replace them with people of his own choosing."  Response to Motion to Dismiss, p. 22.  Plaintiff further argues it is well established that the termination of "such employment" violates the due process guarantees of the Fourteenth Amendment.  Id.

The doctrine of qualified immunity shields government officials who perform discretionary functions from liability for civil damages so long as their actions do not violate clearly established constitutional rights.  See Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982); Doyle, 305 F.3d at 620. To defeat qualified immunity, a plaintiff must demonstrate (1) the

defendant's conduct violated the plaintiff's constitutional rights and (2) the violated right was clearly established at the time of the alleged misconduct.  Lewis v. Downey, 581 F.3d 467, 478 (7th Cir. 2009).

As this Court noted above, Plaintiff has stated a claim under Counts I and II.  Because the precise contours of Plaintiffs' claims are not developed, this Court cannot yet determine whether the alleged violated right was clearly established.  Moreover, whether a defendant's conduct violated a plaintiff's constitutional right often "hinges on the resolution of fact questions."  Id.  Because of such factual issues, a complaint is generally not dismissed pursuant to Rule 12(b)(6) on qualified immunity grounds.  Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001); see also Moran v. Stratton, 2008 WL 1722148, at *7 (C.D. Ill. 2008) (based on the allegations in the complaint, a determination on the defendant's claim of qualified immunity would be premature).  This Court finds that, in this case, a decision on qualified immunity would be premature. Defendants may renew their request for qualified immunity later in the proceedings.

E.    Plaintiffs' Claims for Prospective Relief Are Not Barred by the Eleventh Amendment

Page 26 of  30

Defendants argue that the official capacity claims against them are barred by the Eleventh Amendment.  A suit against a state official in his official capacity is a suit against the State.  Power v. Summers, 226 F.3d 815, 818 (7th Cir. 2000).  A suit against the State, or state official in his official capacity, is barred by the Eleventh Amendment unless: (1) Congress has abrogated the State's immunity from suit, (2) a State has waived its immunity and consented to suit, or (3) the suit is one for prospective injunctive relief pursuant to Ex Parte Young, 209 U.S. 123, 15-60 (1908).  Sonnleitner v. York, 304 F.3d 704, 717 (7th Cir. 2002).

The only exception at issue here is whether the suit is one for prospective injunctive relief.  To determine whether this exception applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  Verizon Maryland, Inc. v. Public Service Com'n of Maryland, 535 U.S. 635, 645 (2002) (quoting  Idaho v. Coeur d'Alene Tribe of Idaho  521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in the

judgment)).

Defendants argue that the alleged violation of due process is not an ongoing violation.  In support thereof, Defendants cite Sonnleitner, 304 F.3d at 718, which held that the "underlying procedural due process claim" could not be "reasonably construed as 'ongoing.'"  The Seventh Circuit noted that, even assuming the plaintiff's constitutional rights were violated, the violation was not the demotion but the fact that the demotion occurred without an adequate opportunity to be heard.  Id. The Seventh Circuit found this was a past violation, not an ongoing one. Id; see also Garcia v. Illinois State Police, 2006 WL 2191341, *3 (C.D. Ill. 2006) (denial of pretermination hearing cannot give rise to a procedural due process claim under Ex parte Young).

However, several courts have distinguished Sonnleitner. In Kinney v. Anglin, 2011 WL 1899345, *7 (C.D. Ill. 2011),  report and recommendation adopted by 2011 WL 1899560 (C.D. Ill. 2001), the court noted that in Sonnleitner, the plaintiff was ultimately "given the opportunity to refute claims against him" and a "personnel commission

determined his demotion was improper."  The <u>Kinney</u> court also noted that "the Seventh Circuit has continued to indicate that when an individual's termination or dismissal directly violates a federal constitutional guarantee, he may maintain a suit for reinstatement." <u>Kinney</u>, 2011 WL 1899345, at *7; <u>see also</u> <u>Doe v. Board of Trustees of the University of Illinois</u>, 429 F.Supp.2d 930, 941 (N.D. Ill. 2006) (noting the holding in <u>Sonnleitner</u> but also noting that the "Seventh Circuit has . . .  continued to indicate that when an individual's termination or dismissal directly violates a federal constitutional or statutory guarantee, he may maintain a suit for reinstatement"); <u>Power v. Summers</u>, 226 F.3d 815, 820 (7th Cir. 2000) (holding that "an injunction that orders a state employee who has been demoted because of his exercise of a federally protected right to be restored to his previous position is not barred by the Eleventh Amendment even though it imposes a salary obligation on the state").

Based on the reasoning of <u>Kinney</u> and <u>Doe</u>, this Court finds that Plaintiffs' claims for injunctive relief are prospective and not barred by the

Eleventh Amendment.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (d/e 14) is

DENIED.

ENTER:    January 19, 2012

FOR THE COURT:

_____s/Sue E. Myerscough_____

SUE E. MYERSCOUGH

UNITED STATES DISTRICT JUDGE
